579 A.2d 1208

**Jeffrey Edward MOHLER**

v.

**STATE of Maryland.**

**No. 1840, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

Oct. 1, 1990.

José Felipé Anderson, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Kreg Paul Greer, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Alexander Williams, Jr., State's Atty. for Prince George's County, of Upper Marlboro, for appellee.

Submitted before ALPERT, WENNER and FISCHER, JJ.

ALPERT, Judge.

This case presents the question of whether a defendant who has entered a guilty plea effectively waives an alleged violation of the Interstate Agreement on Detainers when the State failed to try him within the 120 day statutory time limit. We respond in the affirmative and explain.

## FACTS

On February 5, 1989, the State's Attorney's Office filed an indictment in the Prince George's County Circuit Court charging Jeffrey Edward Mohler (appellant) with the following crimes: assault with intent to murder, malicious stabbing with intent to maim, malicious stabbing with intent to disable, assault and battery, and carrying a dangerous weapon openly with the intent to injure. The State filed a second indictment in the same court on March 13, 1989, charging Mohler with three counts of storehousebreaking, theft over $300.00, and theft under $300.00.

Even before the State filed its second indictment, Mohler already had failed to appear for arraignment on March 3, 1989; the court issued a bench warrant for his arrest. On March 16, 1989, the State filed a request under the Interstate Agreement on Detainers (IAD), Md.Ann.Code art. 27, §§ 616A–616R (Supp.1989), for temporary custody of Mohler to try him on the two indictments. Mohler, who had been incarcerated in Lorton, Virginia, arrived in Prince George's County on May 4, 1989.

The facts relevant to a determination of the issue in this case follow chronologically:

May 5, 1989

Mohler was arraigned and his case continued until May 19, 1989 to allow him to retain counsel; trial was scheduled for May 31, 1989.

May 12, 1989

The case again was continued to give Mohler sufficient time to retain counsel; trial was rescheduled for July 25, 1989.

July 25, 1989

The case was continued because defense counsel was "in carryover trial;" the new trial date was set for September 5, 1989.

September 1, 1989

The court held a hearing on Mohler's motion to suppress and denied the motion.

September 5, 1989

The court held a hearing on Mohler's motion to dismiss the charges against him because of the State's violation of the 120 day limit imposed by the IAD; the court denied the motion. The court granted a continuance to permit defense counsel to locate an essential witness.

September 28, 1989

At trial, Mohler pleaded guilty to malicious stabbing with intent to disable and to storehousebreaking. The court imposed identical sentences of ten years for both charges, all but seven years suspended, with five years supervised probation upon release.

October 6, 1989

Mohler filed a motion to withdraw his guilty plea.

October 27, 1989

Mohler filed an application for leave to appeal to the Court of Special Appeals.

On January 30, 1989, we granted leave to appeal. Appellant presents but one question for our decision:

Should the guilty findings rendered against the appellant be dismissed because of the State's failure to bring the defendant to trial within 120 days of his arrival in Maryland?

1. *Interstate Agreement on Detainers*

"The Interstate Agreement on Detainers [ (IAD) ] is a compact among 48 States, the District of Columbia, Puerto

Rico, the Virgin Islands, and the United States." *Carch-man v. Nash,* 473 U.S. 716, 719, 105 S.Ct. 3401, 3403, 87 L.Ed.2d 516 (1985). Maryland adopted the agreement in 1965. Act of May 4, 1965, ch. 627, 1965 Md.Laws 862, codified at Md.Ann.Code art. 27, §§ 616A–616R (1987 & Supp.1989).

As stated in Article I, Md.Ann.Code art. 27, § 616B (1987), the participating states intend the IAD to prevent the disruption of prisoner treatment and rehabilitation programs that occurs from the uncertainties accompanying "charges outstanding against a prisoner, detainers based on untried indictments, informations or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions...." Article I indicates that the IAD's purpose is to encourage participating states to dispose expeditiously of charges outstanding against such individuals and determine the proper status of detainers "based on untried indictments, informations, or complaints." The IAD provides cooperative procedures to further that end. *Id.*

Under Article IV, *id.* § 616E(a), an "appropriate officer" of a participating state may obtain temporary custody of an individual incarcerated in another participating state to try that individual once the officer has filed a detainer.

Article IV(c), *id.* § 616E(c), directs that "[the] trial shall be commenced within one hundred twenty days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance."

Article V(c), *id.* § 616F(c), provides that

[i]f the appropriate authority shall refuse or fail to accept temporary custody of said person, or in the event that an action on the indictment, information or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in Article III or Article IV hereof, the appropriate court of the jurisdic-

tion where the indictment, information or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect.

Appellant argues that the trial court should have granted his motion to dismiss the charges against him because the State failed to try him within the 120 day period required by Article IV of the IAD. He contends that the time period impermissibly was extended to 124 days without a good cause hearing held before trial on September 5, 1989. He argues that the trial court did not have the authority to exercise jurisdiction and accept the guilty plea tendered on September 5, 1989 because appellant previously had moved for a dismissal of the charges on the grounds of the State's IAD violation.

Appellant submits that a judgment rendered by the trial court is voidable if a prisoner has filed a request for disposition of *intra* state detainers and the State subsequently fails to try the prisoner within the 120 day statutory period of the *Intra* state Detainer Act. *See* Md.Ann. Code art. 27, § 616S(b)(3) (1987 & Supp.1989) (emphasis added). We so held in *Parks v. State*, No. 75, slip op. at 5 (Md.Ct.Spec.App. Oct. 21, 1977), in which we reversed the lower court's judgment because the State failed to obtain a continuance or to try the defendant within the statutory period of the Intrastate Detainer Act and, thus, the trial court "lost jurisdiction of the case and was powerless thereafter to entertain the matter." *See also Parks v. State*, 41 Md.App. 381, 382, 397 A.2d 212, 213 (1979), *aff'd*, 287 Md. 11, 410 A.2d 597 (1980).

The General Assembly enacted the Intrastate Detainer Act in Maryland in 1965, in the same session in which it enacted the IAD. *Parks v. State*, 41 Md.App. 381, 383, 397 A.2d 212, 213 (1979). This court has noted previously that "the purpose and rationale of the two enactments are identical." *Id. See, e.g., Barnes v. State*, 20 Md.App. 262, 315 A.2d 117, *aff'd*, 273 Md. 195, 328 A.2d 737 (1974).

Although there are similarities between the two, there are differences as well. Most notably, the language of the Intrastate Detainer Act specifically provides that "[i]f the untried indictment, information, warrant, or complaint, for which request for disposition is made, is not brought to trial within the time limitation set forth in subsection (b) of this section [*i.e.*, 120 days], *the court no longer has jurisdiction*, and the untried indictment, information, warrant, or complaint has no further force or effect. In that case, the court upon request of the prisoner or his counsel shall enter an order dismissing the untried indictment without prejudice." (Emphasis added). (Md.Ann.Code art. 27, § 616S(e) (1987).

The Intrastate Detainer Act specifically states that the court will lose jurisdiction if the State violates the statutory time period. By contrast, there is no language in Article V(c) of the IAD that suggests a violation of the statutory time period should result in the court's loss of jurisdiction. Further, interpretation of the IAD presents a question of federal law because it is congressionally sanctioned. *State v. Smith*, 316 Md. 223, 227, 557 A.2d 1343, 1345 (1989). We therefore will interpret the IAD based on prior interpretations of that agreement by other state and federal courts rather than on the basis of our interpretation of the Intrastate Detainer Act.

As a general rule, the entry of a guilty plea acts as a waiver of all nonjurisdictional errors and defects, including rights that arise under the IAD. *See, e.g., Kowalak v. United States*, 645 F.2d 534 (6th Cir.1981); *Beachem v. Att'y Gen.*, 808 F.2d 1303 (8th Cir.1987); *United States v. Hobson*, 686 F.2d 628 (8th Cir.1982); *Williams v. State*, 445 F.Supp. 1216 (D.Md.1978); *State v. Gourdin*, 156 Ariz. 337, 751 P.2d 997 (App.1988); *Sherman v. State*, 107 Idaho 869, 693 P.2d 1071 (App.1984); *State v. Binn*, 208 N.J.Super. 443, 506 A.2d 67 (1986); *see also Sutton v. State*, 289 Md.

359, 424 A.2d 755 (1981). *But see People v. Office*, 126 Mich.App. 597, 337 N.W.2d 592 (App.1983).[1]

To circumvent this principle, prisoners have argued that a court loses its jurisdiction over a case once a state has violated the IAD. *See, e.g., Smith v. State*, 73 Md.App. 378, 380, 534 A.2d 371, 372 (1987). In *U.S. v. Palmer*, 574 F.2d 164 (3rd Cir.), *cert. den.*, 437 U.S. 907, 98 S.Ct. 3097, 57 L.Ed.2d 1138 (1978), the Third Circuit explained why the IAD's statutory time limits are not jurisdictional in nature. The court acknowledged that "errors and defenses which go to the jurisdiction of the court to accept a guilty plea may be raised even after the plea has been entered," *Palmer*, 574 F.2d at 167, but indicated that it is the source and importance of the right which the prisoner asserts, as well as its impact, that determine whether a claim is jurisdictional. The court noted that the Supreme Court consistently has held that prisoners may not assert in later proceedings

---

1. At least one court has held to the contrary. In *People v. Office*, 126 Mich.App. 597, 337 N.W.2d 592 (App.1983), the court held that defendant's guilty plea did not waive his right to assert IAD violations. In that case, Wisconsin authorities informed the defendant in December 1978 that Michigan authorities had lodged a "detainer" (a letter and a warrant that the Michigan court ruled was a detainer for purposes of the IAD) against him, but crossed out that part of the form which would have allowed the defendant to request a speedy trial. Michigan authorities took no formal action until April 1981 when they issued a formal complaint and warrant that charged him with prison breaking. The court found that the "purpose and spirit of the IAD is violated if defendant is prevented from asserting his rights under the act simply because he has not been *formally* charged." (Emphasis in original). *Id.* It went on to hold that "failure to inform defendant of his right to request final disposition of said charge and the failure to formally charge defendant when said detainer was issued violated defendant's rights under Art. III." *Id.* 337 N.W.2d at 595. The court further held that the appropriate remedy was dismissal. The chief justice dissented on the grounds that the issue did not constitute a jurisdictional defense because the IAD provision at issue did not provide the sanction of automatic dismissal for violations thereof. Thus, he believed that the defendant had waived the issue when he pleaded guilty. *Id.* For reasoning that supports the position that a violation of rights which arise under Article IV(c) should survive a guilty plea, see the court's dicta in *People v. Harris*, 148 Mich.App. 506, 384 N.W.2d 816, 817–18 (App.1986).

deprivations of constitutional rights which occurred before entry of a guilty plea:

When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

*Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973). By contrast, the IAD is nothing more than a set of procedural rules, so that a right conferred by the statute is not so "fundamental" as to survive a guilty plea. The court held that the "violation of a statutory provision such as Article IV(e) is not sufficiently important to deny a court jurisdiction to entertain a guilty plea...." *Id.; see also Camp v. United States*, 587 F.2d 397 (8th Cir.1978); *Williams v. State*, 445 F.Supp. 1216 (D.Md.1978); *State v. Carter*, 151 Ariz. 532, 729 P.2d 336 (App.1986).

 Because appellant asserts a jurisdictional defense, the issue is properly before us for review. We follow other jurisdictions and hold that the rights which the IAD confers are not so "fundamental" as to survive a guilty plea and that appellant waived all nonjurisdictional defects, including the State's alleged violation of the IAD, when he entered his guilty plea.

 Even if we did not so hold, we still could not decide in appellant's favor. On July 25, 1989, defense counsel requested a continuance because he was "in carryover trial." It was this continuance, which appellant presumably agreed to, that put the trial date beyond the 120 day statutory period. Appellant cannot ask the court for a continuance and then, when it is granted, complain that the State has violated his rights under the IAD by not trying him within the statutory time limit. We agree with the trial judge that the continuance granted was for good cause shown as required by Article IV(c).

### 2. *Motion to Withdraw Guilty Plea*

There is no evidence in the record that the court ever acted on appellant's motion to withdraw his guilty plea. We need not be concerned with the possibility of remand or the lack of jurisdiction to hear the appeal for the reasons explained below. Rule 4–242(f) addresses the circumstances under which a defendant may withdraw a plea of guilty or nolo contendere:

> After the imposition of sentence, on motion of a defendant filed within ten days, the court may set aside the judgment and permit the defendant to withdraw a plea of guilty or nolo contendere if the defendant establishes that the provisions of section (c)[2] or (d) of this Rule were not complied with or there was a violation of a plea agreement entered into pursuant to Rule 4–243.

In his motion to withdraw his guilty plea, appellant offered but a single reason to support the motion: the State's alleged violation of the Interstate Agreement on Detainers, which the judge already had ruled on and which falls outside the purview of Rule 4–242(f). Thus, there was no basis on which the judge could have set aside the judgment and allowed appellant to withdraw his plea.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.

---

**2.** Rule 4–242(c) reads as follows:

The court may accept a plea of guilty only after it determines, upon an examination of the defendant on the record in open court conducted by the court, the State's Attorney, the attorney for the defendant, or any combination thereof, that (1) the defendant is pleading voluntarily, with understanding of the nature of the charge and the consequences of the plea; and (2) there is a factual basis for the plea. The court may accept the plea of guilty even though the defendant does not admit guilt. Upon refusal to accept a plea of guilty, the court shall enter a plea of not guilty.