No. 69,065

STATE OF KANSAS, *Appellee*, v. TONIO HERNANDEZ RODRIGUEZ, *Appellant*.

(869 P.2d 631)

 Opinion filed
March 4, 1994. 

*Julie A. Gorenc*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with her on the brief for appellant.

*Tamara S. Hicks*, assistant county attorney, argued the cause, and *John P. Wheeler, Jr.*, county attorney, *Richard H. Hodson*, of Garden City, and *Robert T. Stephan*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

ABBOTT, J.: This is a direct appeal by the defendant, Tonio Hernandez Rodriguez, following his plea of guilty to aggravated robbery (K.S.A. 21-3427). Rodriguez contends that he was denied a speedy trial and that the trial court abused its discretion in sentencing him and in failing to modify his sentence.

Rodriguez was charged in Finney County, Kansas, with six felonies arising out of a July 11, 1990, incident involving the victim, H.D. The offenses charged were aggravated burglary, aggravated robbery, aggravated battery, aggravated assault, theft, and unlawful possession of a firearm.

Armed with a .38 caliber handgun, Rodriguez entered the residence of H.D., threatened her, and took money and other items belonging to her and her roommate. Rodriguez then forced her to accompany him to Colorado in her vehicle. On the way, he sexually assaulted her in Kearny County, Kansas, and in Prowers County, Colorado. Rodriguez was charged and convicted in Colorado of first-degree sexual assault, and on January 3, 1991, he was sentenced to 48 years in prison. He was placed in the custody of the Colorado Department of Corrections.

The parties agree to the following sequence of events:

| | |
|---|---|
| January 1991 | Colorado receives notification of detainers on Rodriguez from both Kansas and Texas. |
| January 22, 1991 | Rodriguez signs requests for disposition of the Texas and Kansas charges. |
| February 5, 1991 | Colorado signs offer to deliver temporary custody to Kansas. |
| February 7, 1991 | Colorado's offer to deliver temporary custody mailed. |
| February 11, 1991 | Finney County attorney receives Rodriguez' request for disposition. |

| | |
|---|---|
| February 13, 1991 | Rodriguez' request for disposition filed in the Finney County District Court. |
| March 11, 1991 | Texas completes extradition process. |
| March 22, 1991 | Colorado receives notice that Rodriguez is scheduled for a hearing in Finney County on May 28, 1991. |
| March 25, 1991 | Colorado writes letter notifying Finney County that Texas has completed process for temporary custody, that Rodriguez will be transported to Texas on April 16, 1991, and that Rodriguez will be unavailable for extradition to Kansas until his return from Texas. The standard procedure for Colorado was that where two states had outstanding warrants on an inmate, the state which completed the paperwork first would receive temporary custody first. |
| April 16, 1991 | Rodriguez arrives in Texas. |
| August 19, 1991 | Rodriguez disposes of Texas charges. |
| October 16, 1991 | Rodriguez returns to Colorado. |
| November 8, 1991 | Rodriguez arrives in Kansas. |
| November 19, 1991 | Rodriguez requests 7-day continuance; granted. |
| December 6, 1991 | Rodriguez files motion to dismiss for speedy trial violation. |
| December 10, 1991 | Hearing on motion to dismiss held; continued for failure of defense to give adequate notice. The trial court charged 10 days to defendant from December 6, 1991. |
| December 18, 1991 | Motion to dismiss denied by district magistrate judge. |
| January 15, 1992 | Motion to dismiss denied by district court judge. Rodriguez pleads guilty to aggravated robbery. |
| January 22, 1992 | Scheduled trial date. |

Rodriguez was sentenced to 15 years to life, and that sentence was tripled pursuant to the Habitual Criminal Act for a controlling term of 45 years to life. The sentence was imposed consecutive

to sentences in Colorado and Texas. K.S.A. 1992 Supp. 21-4618 was invoked, making the minimum sentence mandatory because the crime was committed with the use of a firearm.

Rodriguez' motion to modify his sentence was denied. This appeal followed.

There are separate statutory procedures for prisoners incarcerated in Kansas with charges pending against them in a Kansas court (Uniform Mandatory Disposition of Detainers Act, K.S.A. 22-4301 *et seq.*., which we will refer to as the "Act") and for prisoners held in one state who have criminal charges pending against them in another state (Agreement on Detainers, K.S.A. 22-4401 *et seq.*, which we will refer to as the "Agreement"). Rodriguez is subject to the Agreement.

The Agreement provides a uniform method by which persons imprisoned in one state (sending state) can seek disposition of charges pending in another state (receiving state) when both states are parties to the Agreement. These cooperative procedures are designed to "encourage the expeditious and orderly disposition of such charges" because outstanding detainers "produce uncertainties which obstruct programs of prisoner treatment and rehabilitation." K.S.A. 22-4401, Art. I. This is because there are limited resources to provide programs, treatment, and other forms of rehabilitation. A prisoner is usually barred from participation in such programs until detainers are disposed of so that resources will not be committed to a prisoner who may be sent to another state during the program.

Article III(a) of the Agreement provides that whenever a detainer from one state is lodged against a defendant who is imprisoned in a penal or correctional institution of another state, the defendant

"shall be brought to trial within one hundred and eighty (180) days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint: *Provided*, That for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time

already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner."

The prisoner must provide a written notice and request for final disposition to the official who has custody of the prisoner, and that official is required to promptly forward the inmate's request and the certificate described above to the appropriate prosecuting official and court having jurisdiction of the outstanding charges. K.S.A. 22-4401, Art. III(b). When the receiving state makes a request for temporary custody, there is a mandatory delay of 30 days before the sending state may grant the request. K.S.A. 22-4401, Art. IV(a). The 180-day deadline set forth in Article III(a) is tolled "whenever and for as long as the prisoner is unable to stand trial, as determined by the court having jurisdiction of the matter." K.S.A. 22-4401, Art. VI(a).

Rodriguez contends that more than 180 days elapsed from the date he made his request for disposition of the offenses in the case at bar to the date he was scheduled for trial. Rodriguez was in the custody of the Colorado Department of Corrections when detainers from Finney County, Kansas, and from Texas were served on him. He requested disposition of both the Kansas and the Texas detainers the same day. Although Rodriguez agrees that a portion of the time was tolled by virtue of his unavailability when he was in Texas disposing of charges there, he maintains that the 180-day deadline expired before his scheduled trial date of January 22, 1992.

The State urges this court to find that Rodriguez waived the right to a speedy trial under the Agreement when he pleaded guilty. The State points to *State v. Freeman*, 236 Kan. 274, 280, 689 P.2d 885 (1984): "This state has held in a number of cases that a defendant waives his right to a speedy trial by a plea of guilty in the district court. *Witt v. State*, 197 Kan. 363, 416 P.2d 717 (1966); *Cooper v. State*, 196 Kan. 421, 411 P.2d 652 (1966); *Moore v. Hand*, 187 Kan. 260, 356 P.2d 809 (1960)."

As we view it, the Act contains language that requires a different result on the question of waiver than does the Agreement.

The Act provides that a prisoner must be tried within 180 days after receipt of the request for final disposition or the court loses "jurisdiction" and the charging document shall be of no "further

force or effect." The Agreement, on the other hand, does not contain language making the failure to commence trial within 180 days after the receipt of the request for final disposition jurisdictional.

In *State v. Goetz*, 187 Kan. 117, 353 P.2d 816 (1960), a case presenting a procedural situation similar to the case at bar, this court stated the general rule that the right to a speedy trial is a personal right which may be waived, and it is waived if an accused fails to assert the right. That case, however, involved the Act and not the Agreement, and this court ordered the defendant's conviction (based on a plea of guilty) set aside and the charge dismissed with prejudice. *Goetz* was based on G.S. 1949, 62-2903 (1959 Supp.), which is identical in pertinent part to K.S.A. 22-4303:

"If, after such a request, the indictment, information or complaint is not brought to trial within that period, no court of this state shall any longer have jurisdiction thereof, nor shall the untried indictment, information· or complaint be of any further force or effect, and the court shall dismiss it with prejudice."

The *Goetz* court stated that the legislature had spoken in clear and concise terms, requiring the court to hold there was no jurisdiction.

Four months later and reported in the same volume of the Kansas Reports as *Goetz* is *Moore v. Hand*, 187 Kan. 260. In *Moore*, the defendant was not brought to trial within the statutory and constitutional time restraints. This court stated what is still the general rule:

"Notwithstanding the constitutional guaranty of a speedy trial, implemented by legislation such as G.S. 1949, 62-1432, . . . it is universally held that the right is a personal right which an accused may waive, and that he is not entitled to a discharge for delay occasioned by his own act, application or agreement. [Citations omitted.]

. . . .

"In the case of *In re Mote*, 98 Kan. 804, 160 Pac. 223, although not factually in point, it was held:

'The constitutional guaranties in section 10 of the bill of rights, which insure to every person accused of crime a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed, etc., are personal privileges which the accused may waive, and when they are freely waived by a person charged with crime, by a plea of guilty in a district court of general jurisdiction, it is too late thereafter to challenge the

constitutionality of the statute conferring jurisdiction upon the court which imposed judgment upon him.' (syl. 1.)

"At page 343 of the annotation in 57 A.L.R. 2d, . . . the rule, supported by a number of cases from other jurisdictions, is stated thusly:

'Defendant's plea of guilty made without raising the question of the denial of a speedy trial constitutes a valid and binding waiver of the right thereto.'

"The facts and questions before us are not to be confused with those in the recent case of *State v. Goetz*, 187 Kan. 117, 353 P.2d 816, which dealt with the provisions of G.S. 1959 Supp., 62-2901, 2902 and 2903." 187 Kan. at 262-63.

The *Moore* court made clear that the Act, in G.S. 1949, 62-2903 (1959 Supp.) (now K.S.A. 22-4303), required a different result than that reached in other cases where a defendant pleaded guilty after a speedy trial violation.

In *Mohler v. State*, 84 Md. App. 431, 579 A.2d 1208 (1990), the defendant raised the speedy trial issue before pleading guilty. The court, although noting that the Maryland versions of the Agreement and the Act had identical purposes and rationales, distinguished the Act from the Agreement because the Agreement contained no language similar to the Act depriving a court of jurisdiction if the speedy trial right under the Agreement is violated. The court interpreted the Agreement "based on prior interpretations of that agreement by other state and federal courts rather than on the basis of [its] interpretation of the Intrastate Detainer Act." 84 Md. App. at 437. The Maryland court found that the statutory time limits under the Agreement are not jurisdictional; rather, the Agreement is only a set of procedural rules. The court held that the issue was properly before it for review because the defendant was asserting a jurisdictional defense. However, the defendant's argument was held meritless because he waived the alleged violation of the Agreement by pleading guilty. Because the defendant's guilty plea waived all nonjurisdictional errors and because violation of the Agreement is a nonjurisdictional error, the defendant's claimed violation of the Agreement could not succeed. 84 Md. App. at 437-39.

In *State v. Carter*, 151 Ariz. 532, 729 P.2d 336 (1986), the defendant's motion for discharge on speedy trial grounds under the Agreement was denied. The court noted the Arizona rule that a defendant waives all nonjurisdictional defects by pleading guilty, even when the defendant raises a speedy trial issue before

pleading guilty. 151 Ariz. at 533. The court also noted that the Agreement is governed by federal law and that under both federal and Arizona law "[b]y entering into a guilty plea, a defendant waives his right to claim pre-plea constitutional violations." 151 Ariz. at 533. The court stated:

"The [Agreement] is designed to protect prisoners from unfair detainers, not to provide prisoners with a means to escape prosecution. [Citation omitted.] . . .

"The [Agreement] speedy trial limits serve the same purpose as state and federal speedy trial requirements. If the state fails to comply with the [Agreement] time limits in bringing the prisoner to trial, the subject indictment will be dismissed. However, these time limitations are for the benefit of the defendant and can be waived. [Citations omitted.] If speedy trial limitations can be waived, obviously they are not jurisdictional in the sense that their violation deprives a court of the power to act against the defendant.

"Considering the legislative history and purpose of the [Agreement], we find that determination of whether the state has complied with the time limits in which a prisoner must be brought to trial under Article III or Article IV is not a jurisdictional question. Therefore, it can be, as it has been in this case, waived by a subsequent plea of guilty." 151 Ariz. at 533-34.

We conclude that by pleading guilty Rodriguez waived the speedy trial issue.

We do comment that Rodriguez argues in his brief that he should not be subject to waiver because the trial court told him jurisdictional issues are never waived by pleading guilty. The remedy for such a violation is to set the plea aside as not voluntarily and intelligently made. Rodriguez does not and did not request that his plea be set aside. If indeed the trial judge misinformed Rodriguez of the consequences of his plea, Rodriguez can have the plea set aside as not voluntarily and intelligently made. This, of course, would expose him to trial on the other five felonies dismissed under his plea bargain. Had Rodriguez been properly informed as to a plea waiving the right to a speedy trial, he could have elected to plead guilty or he could have rejected the plea agreement and gone to trial on the six felony charges. Although he makes no claim his plea was not freely and voluntarily made, if he successfully does so and the plea is set aside he will be in exactly the same position he was in when the trial judge gave him the allegedly erroneous advice, including

the right to challenge the speedy trial issue following his guilty plea.

Rodriguez next argues the trial judge abused his discretion in sentencing him and in refusing to modify his sentence.

This court has repeatedly addressed the sentencing judge's scope of discretion in sentencing:

"It is the sentencing judge alone who determines the appropriate sentence or other disposition of the case. The sentencing judge determines the sentence by exercising his or her best judgment, common sense, and judicial discretion after considering all of the reports, the defendant's background, the facts of the case, and the public safety. A sentence imposed within the statutory guidelines will not be disturbed on appeal if it is within the trial court's discretion and not a result of partiality, prejudice, oppression, or corrupt motive." *State v. McDonald*, 250 Kan. 73, Syl. ¶ 4, 824 P.2d 941 (1992).

See *State v. Richard*, 252 Kan. 872, 880, 850 P.2d 844 (1993).

In *State v. Heywood*, 245 Kan. 615, 621, 783 P.2d 890 (1989), this court stated:

"One who asserts that the court has abused its discretion bears the burden of showing such abuse of discretion. Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable. Stated another way, discretion is abused only where no reasonable person would take the view adopted by the trial court. If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion."

When a sentence greater than the minimum is imposed, "it is better practice for the trial court to make, as part of the record, a detailed statement of the facts and factors considered by the court in imposing sentence. Such a record would be of great assistance to the appellate courts in determining whether the sentencing court has abused its discretion." *State v. Buckner*, 223 Kan. 138, Syl. ¶ 9, 574 P.2d 918 (1977). See *Richard*, 252 Kan. at 881; *McDonald*, 250 Kan. 73, Syl. ¶ 6; *State v. Harrold*, 239 Kan. 645, Syl. ¶ 3, 722 P.2d 563 (1986).

Two statutes specifically address the factors which should be considered by a sentencing judge in order to make sentences individualized. K.S.A. 21-4601 requires that the statutes on sentencing be

"liberally construed to the end that persons convicted of crime shall be dealt with in accordance with their individual characteristics, circumstances,

needs, and potentialities as revealed by case studies; that dangerous offenders shall be correctively treated in custody for long terms as needed; and that other offenders shall be dealt with by probation, suspended sentence, fine or assignment to a community correctional services program whenever such disposition appears practicable and not detrimental to the needs of public safety and the welfare of the offender, or shall be committed for at least a minimum term within the limits provided by law."

Further, K.S.A. 21-4606 sets forth statutory factors which must be considered in announcing sentence:

"(1) In sentencing a person to prison, the court, having regard to the nature and circumstances of the crime and the history, character and condition of the defendant, shall fix the lowest minimum term which, in the opinion of said court, is consistent with the public safety, the needs of the defendant, and the seriousness of the defendant's crime.

(2) The following factors, while not controlling, shall be considered by the court in fixing the minimum term of imprisonment:

(a) The defendant's history of prior criminal activity;

(b) The extent of the harm caused by the defendant's criminal conduct;

(c) Whether the defendant intended that his criminal conduct would cause or threaten serious harm;

(d) The degree of the defendant's provocation;

(e) Whether there were substantial grounds tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense;

(f) Whether the victim of the defendant's criminal conduct induced or facilitated its commission;

(g) Whether the defendant has compensated or will compensate the victim of his criminal conduct for the damage or injury that he sustained."

First, Rodriguez suggests that the sentencing judge abused his discretion in ordering his sentence to be consecutive to his Texas and Colorado sentences, especially after sentencing Rodriguez to the maximum term of 15 years to life and then tripling it under the Habitual Criminal Act. Rodriguez notes in support of this argument only that he will most likely not be released from incarceration before his death. However, "[t]he fact that the minimum sentence imposed by a trial court exceeds the life expectancy of the defendant has never been grounds, per se, for a finding that the sentence is oppressive or constitutes an abuse of discretion." *State v. Nunn,* 247 Kan. 576, 580, 802 P.2d 547 (1990).

Rodriguez also contends that the sentencing judge failed to address his individual circumstances as required by K.S.A. 21-4601, although he admits that the sentencing judge enumerated

the factors set forth in K.S.A. 21-4606. "The criteria set forth in K.S.A. 21-4606 may be considered as being indicative of the matters intended to be considered under K.S.A. 21-4601." *State v. Fisher*, 249 Kan. 649, 652, 822 P.2d 602 (1991). The sentencing judge considered the criteria set forth in K.S.A. 21-4606 in great detail, and he also considered both the individual characteristics of the defendant and the needs of society. He stated:

"All the Court can do—the Court cannot look into the future and say without a doubt what will happen in the future with an individual. And in any endeavor involving human beings the only thing a person has to look at to predict what the future will be is the past. And if the past shows time and time and time and time again violations of serious, serious criminal statutes, then the only thing the Court can do is assume that in the future that that will be the case . . . ."

The sentence imposed was based on the individual characteristics of Rodriguez, and it was in the interest of the protection of society: "Mr. Rodriguez, there is a need to separate you from society, and the Court is giving you these maximum sentences to do so."

Rodriguez also points out that three of his prior convictions noted by the trial court had actually been dismissed. The State concedes that the sentencing judge misstated Rodriguez' prior criminal history. The trial judge, in sentencing Rodriguez, stated:

"The Court also has to look at the criminal—prior criminal record of the defendant, and the Court finds from looking at that that starting in 1968 with a juvenile record, the defendant has convictions for burglary, shoplifting, and worthless checks.

"We then go into the adult record where the defendant has a conviction record of murder without malice; theft; kidnapping; oral copulation; rape; two escapes I think in two different states, I'm not certain; second degree robbery; burglary of a habitat twice; sexual assault; and then another conviction for a crime that's termed sexual assault in the first degree."

Of the offenses noted by the trial judge, three had been dismissed. While the defendant was on parole in Texas in 1990, he was charged with three offenses: two charges for burglary of habitat and one for sexual assault. He pleaded guilty to one burglary of habitat charge and was sentenced to 30 years. The other burglary of habitat charge and the sexual assault charge were dismissed. In Colorado, he received 48 years for sexual assault, and an escape charge was dismissed.

The defendant's record speaks for itself. As a juvenile he committed burglary and shoplifting. Following a truancy adjudication, he was sent to reform school and released. He wrote worthless checks and was returned to reform school. He was released and later returned for parole violation. He escaped in September 1973 and in December 1973 killed a man outside a bar, using a firearm. He was released from prison in 1976 and four months later was sentenced to two years for automobile theft. He was released in January 1978.

Three months later he was convicted in California of kidnapping, rape, and oral copulation. He also was convicted of escape. He was discharged in September 1981. He was next convicted of second-degree robbery (plea bargained from aggravated robbery) in Texas. He served seven years and was released in December 1989.

Within months he was charged in Texas with sexual assault and two counts of burglary of a habitat. He then fled to Kansas, and within 24 hours of his arrival in Garden City, while armed with a handgun, he broke into a home, kidnapped a young female, took money and property belonging to her and her roommate, stole her car, and forced her to accompany him to Colorado. He sexually assaulted her in both Kansas and Colorado.

We have no hesitancy in saying that while the trial judge may not have been 100% correct in summarizing the defendant's record, the sentence imposed is justified by the defendant's extensive record and his inability to refrain from criminal activity for any length of time.

Rodriguez has failed to establish that the sentence imposed was the result of an abuse of discretion. The only basis Rodriguez sets forth for his contention that the court abused its discretion in failing to modify his sentence is the abuse alleged as to the original sentencing. Because there was no abuse of discretion in the initial sentencing, Rodriguez' assertion of abuse at the modification stage must fail as well.

Affirmed.