NOT DESIGNATED FOR PUBLICATION

No. 119,104

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

KING PHILLIP AMMAN REU-EL,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; RICHARD D. ANDERSON, judge. Opinion filed October 4, 2019. Affirmed.

*Gerald E. Wells*, of Jerry Wells Attorney-at-Law, of Lawrence, for appellant.

*King Phillip Amman Reu-El*, appellant pro se.

*Jodi Litfin*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before LEBEN, P.J., MALONE and GARDNER, JJ.

PER CURIAM: King Phillip Amman Reu-El was convicted in a jury trial of two counts of first-degree murder, one count of attempted first-degree murder, one count of aggravated battery, and criminal possession of a firearm. At the time of those convictions, Reu-El was known by his former name, Phillip D. Cheatham, Jr.

The Kansas Supreme Court determined that Reu-El's trial attorney provided inadequate representation and sent the case back for a new trial. *State v. Cheatham*, 296

1

Kan. 417, 292 P.3d 318 (2013). But during jury selection, Reu-El entered into a plea agreement with the State under which he entered no-contest pleas to capital murder and attempted first-degree murder. The other charges were dismissed, and the State agreed not to seek the death penalty.

Reu-El comes before us on appeal from the district court's summary denial of his motion for habeas corpus relief under K.S.A. 60-1507. Reu-El wants his no-contest pleas set aside—and potentially dismissal of the charges against him. His claims generally relate to two potential witnesses he says could have provided evidence helpful to him at a second trial; these witnesses died between the initial trial, held in 2005, and his second trial, in which jury selection began in 2015. He contends that his attorneys (different ones over the years) collectively failed to discover and preserve the testimony of those witnesses.

We'll discuss Reu-El's arguments in more detail in our opinion, but we conclude that he hasn't shown that either of these witnesses' testimony was sufficiently important that their absence prejudiced his ability to defend himself against the State's charges. Because prejudice is one of the things a party claiming ineffective assistance of counsel must show, the district court was right to dismiss Reu-El's habeas claim.

FACTUAL AND PROCEDURAL BACKGROUND

Reu-El was charged with capital murder in the alternative with two counts of first-degree murder of Annette Roberson and Gloria Jones. The State also charged him with attempted first-degree murder and aggravated battery of Annetta Thomas, and criminal possession of a firearm. A jury convicted him of all counts, and the court imposed the death penalty.

2

Reu-El appealed to the Kansas Supreme Court, challenging the constitutional adequacy of his trial representation and requesting a remand for a hearing to determine whether his representation was adequate under *State v. Van Cleave*, 239 Kan. 117, 716 P.2d 580 (1986). The court granted that request. See *Cheatham*, 296 Kan. at 419. On remand, the district court concluded that Reu-El's trial was not undermined by ineffective assistance of counsel, but the Kansas Supreme Court reversed the district court's conclusion about the existence of ineffective assistance of counsel and remanded the case for a new trial. See *Cheatham*, 296 Kan. at 455.

Back again in the district court, Reu-El and his attorneys filed several motions seeking dismissal of the charges on the basis of speedy trial and/or due process, the unconstitutionality of the death penalty, and the district court's lack of jurisdiction. The district court rejected Reu-El's attempts to bar retrial, although Reu-El continued to raise the issues throughout the district court proceedings. See *State v. Reu-El*, 306 Kan. 460, 462-65, 394 P.3d 884 (2017).

On September 30, 2014, the State filed an amended complaint charging Reu-El with the same crimes he had been convicted of. The second trial began in February 2015. After several days of jury selection, Reu-El reached a plea agreement with the State. In exchange for Reu-El's no-contest pleas to capital murder and attempted first-degree murder, the State agreed to dismiss the remaining counts and not to seek the death penalty. *Reu-El*, 306 Kan. at 465. Finding the pleas voluntary and knowing, the court accepted them and found Reu-El guilty of capital murder and attempted first-degree murder.

While the retrial was pending in the district court, Reu-El also filed an original petition for a writ of habeas corpus in the Kansas Supreme Court. During the plea hearing, the district court referred to this habeas corpus proceeding and cautioned Reu-El

3

that his plea might have an effect on those proceedings. The Kansas Supreme Court later dismissed the petition for writ of habeas corpus as moot.

On March 9, 2015, before sentencing, Reu-El filed a pro se motion to arrest judgment and to withdraw his no-contest pleas. Of significance for this appeal, Reu-El argued that he felt compelled by the circumstances to enter the plea but did not allege that trial counsel's deficient representation constituted part of those circumstances. Because of that, the district court did not appoint new counsel to represent Reu-El on the motion to withdraw his no-contest pleas. Reu-El essentially presented his motion with stand-by counsel. The court rejected Reu-El's arguments supporting both motions. The district court then sentenced Reu-El to life imprisonment without the possibility of parole for 25 years for the capital murder conviction plus a consecutive 165-month sentence for attempted first-degree murder. *Reu-El*, 306 Kan. at 469.

Reu-El again appealed to the Kansas Supreme Court. That court affirmed the district court's denial of Reu-El's motion to withdraw his no-contest pleas. *Reu-El*, 306 Kan. at 481.

Reu-El then filed a motion seeking habeas corpus relief under K.S.A. 60-1507 in the district court. The district court summarily denied Reu-El's motion, and he has now appealed to this court.

ANALYSIS

A prisoner in state custody may file a motion seeking to challenge a conviction or sentence under K.S.A. 60-1507(a). The movant bears the burden of establishing an evidentiary basis supporting his or her claims for relief in order to warrant an evidentiary hearing; mere conclusory contentions are insufficient. See *Sola-Morales v. State*, 300

4

Kan. 875, Syl. ¶ 3, 335 P.3d 1162 (2014). But once the movant has established a colorable evidentiary basis for the claims, the court must conduct an evidentiary hearing. See K.S.A. 2018 Supp. 60-1507(b); *Grossman v. State*, 300 Kan. 1058, 1062, 337 P.3d 687 (2014).

Accordingly, a court presented with a motion for habeas corpus relief under K.S.A. 2018 Supp. 60-1507 may resolve the motion in one of three methods:

1. If a review of the motion and the record conclusively demonstrates that the movant is not entitled to relief, the district court may summarily deny the motion without a hearing.

2. If a review of the motion and the record suggests that one or more claims potentially have merit, the court may appoint counsel and hold a nonevidentiary hearing to help define the claims for relief and then may summarily deny the motion or schedule an evidentiary hearing.

3. The court may appoint counsel and hold a full evidentiary hearing on the movant's claims. See *Sola-Morales*, 300 Kan. at 881.

The district court in this case chose the first option, dismissing the habeas claim without a hearing. When the district court has resolved the movant's claims without hearing new evidence, we are in the same position as the district court to evaluate the claims, so we review the matter independently, without any required deference to the district court. See *Grossman*, 300 Kan. at 1061; *Sola-Morales*, 300 Kan. at 881.

Reu-El presented several arguments to the district court in his pro se motion under K.S.A. 60-1507. Most of the arguments appear to have been abandoned on appeal. Here, Reu-El has presented two briefs, one through his appointed appellate counsel, Gerald Wells, and one authored by Reu-El. The claims made in the briefs appear to turn on the loss of testimony from two witnesses Reu-El claims would have been helpful to him in

5

the second trial. Reu-El contends that his original trial counsel, Dennis Hawver, did not discover or use the testimony of Ricquia Abram and did not properly use Detective Louis Randall to introduce exculpatory evidence during Reu-El's first trial. Both witnesses died before Reu-El's second trial proceedings had begun.

Reu-El presents this habeas corpus action having entered no-contest pleas to capital murder and attempted first-degree murder. His arguments do not clearly indicate whether he seeks to withdraw his pleas on the basis of ineffective assistance of counsel or whether he seeks dismissal of his convictions on the basis of an alleged due-process violation that he argues was abandoned through the deficient representation he received at the district-court and appellate-court levels. Either contention must surmount significant obstacles and, as we will see, fails to do so here.

The right to reasonably effective assistance of counsel is derived from the guarantee in the Sixth Amendment to the United States Constitution "that the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI; *Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *Miller v. State*, 298 Kan. 921, 929, 318 P.3d 155 (2014). The Sixth Amendment applies to state criminal prosecutions through the Fourteenth Amendment to the United States Constitution. 298 Kan. at 929.

Nevertheless, courts presume that counsel's representation fell within a wide range of reasonable conduct. *Cullen v. Pinholster*, 563 U.S. 170, 189, 131 S. Ct. 1388, 179 L. Ed. 2d 557 (2011); *Cheatham*, 296 Kan. at 431-32. To rebut this presumption, a party must show by a preponderance of the evidence that (1) counsel's representation fell below an objective standard of reasonableness under all the circumstances in which the representation was rendered and (2) the deficient representation was sufficiently serious to prejudice the defendant's right to a fair trial. *Missouri v. Frye*, 566 U.S. 134, 140, 132

6

S. Ct. 1399, 182 L. Ed. 2d 379 (2012); *Strickland*, 466 U.S. at 687; *Edgar v. State*, 294 Kan. 828, 837, 283 P.3d 152 (2012). In the context of a plea, the prejudice component of the test is established by demonstrating a reasonable probability that, had the representational deficiency not occurred, the defendant would have opted to take the case to trial. *State v. Johnson*, 307 Kan. 436, 447, 410 P.3d 913 (2018). The test is essentially the same for a challenge to the adequacy of appellate representation; the movant must establish a reasonable probability that, but for appellate counsel's deficient representation, the appeal would have resulted in some form of legal relief for the movant. See *Miller*, 298 Kan. at 929-30. A reasonable probability is the level of persuasion necessary to undermine an appellate court's confidence in the outcome of the legal proceedings. See *State v. Sprague*, 303 Kan. 418, 426, 362 P.3d 828 (2015).

In this case, the district court did not hold an evidentiary hearing. Accordingly, the record does not contain an explanation by counsel for their choices in representing Reu-El. The absence of such evidence generally hampers this court's ability to determine the first prong of *Strickland*. To avoid that problem, we will assume for purposes of this appeal that the alleged deficiency in representation was not the result of a reasoned strategic choice. See *Edgar*, 294 Kan. at 843. We can do so in this case because even if we assume inadequate representation, Reu-El has not shown prejudice. The district court therefore was correct in summarily denying his motion for relief.

A. *Original Trial Counsel*

Reu-El argues that Hawver provided deficient representation in failing to depose or subpoena Randall and Abram for his first trial. The State argues that Reu-El should have raised this claim in the appeal of his jury-trial conviction and that, because he didn't, he is barred by res judicata from raising it now. See *State v. Johnson*, 269 Kan. 594, 601, 7 P.3d 294 (2000). In that earlier appeal, Reu-El raised several bases for a claim that

7

Hawver's representation was inadequate, but this wasn't one of them. The Kansas Supreme Court decided in Reu-El's favor, finding Hawver's representation was found to be constitutionally ineffective and granting Reu-El a new trial. *Cheatham*, 296 Kan. at 455.

Reu-El argues that this new-trial order couldn't fix Hawver's failure regarding these witnesses because Randall and Abram had died before the case came back to the district court for his new trial. Reu-El argues this left him unable to present his "best defense." We will assume, without deciding, that this claim is sufficiently different from ones Reu-El could have raised in his earlier appeal that it is not barred by res judicata. Essentially, Reu-El contends that the loss of the two witnesses in his second trial proceedings required dismissal of the criminal charges because his due-process right to a fair trial was irremediably compromised. The loss of potential witnesses through trial delay, however, does not automatically constitute a violation of a criminal defendant's right to due process—the defendant must show actual and substantial prejudice to the defense. See *United States v. Gladney*, 474 F.3d 1027, 1030-31 (8th Cir. 2007); *United States v. Henderson*, 337 F.3d 914, 920 (7th Cir. 2003); *United States v. McMutuary*, 217 F.3d 477, 481-82 (7th Cir. 2000); *United States v. May*, 549 F.2d 670, 677 n.12 (9th Cir. 1977).

To evaluate Reu-El's claim of prejudice, we must consider his claims about what these two witnesses could have testified to in the context of a second trial. That context is critical because proof of the death of a witness is not by itself sufficient to establish prejudice. The defendant must establish specific facts supported by evidence that demonstrate how the loss of a witness affected the defense adversely. *Henderson*, 337 F.3d at 920.

## 1. *Ricquia Abram*

Reu-El contends that Abram, who died on April 3, 2010, would have testified that Reu-El was in Chicago on the night of the murders. Other than his own assertions, Reu-El has presented no evidence that confirms that Abram would have testified in the manner he claims. The law requires evidence that potential evidence was lost through the death of a defense witness. Reu-El's claims are entirely speculative.

Moreover, even if we accept Reu-El's uncorroborated assertion about Abram's lost testimony, he cannot establish that the presentation of this evidence would have affected the course of the trial. Reu-El presented other witnesses who testified that he was in Chicago around the time of the murders—but the district court that evaluated the alibi testimony at the *Van Cleave* hearing found it unpersuasive, a conclusion the Kansas Supreme Court agreed with:

> "Our review of the facts confirms the *Van Cleave* court's holding that no prejudice followed [from trial counsel's failure to call these alibi witnesses].
>
> "As noted by the *Van Cleave* court, 'there is no one who can put the Defendant in Chicago, or on the way to Chicago on December 13, 2003, the date of these shootings.' The court then detailed the specifics regarding each of the three witnesses who could be considered alibi witnesses and how their testimony or lack of availability would not support Cheatham's claims. In light of this evidence—or lack thereof—Cheatham has failed to establish prejudice." *Cheatham*, 296 Kan. at 438-39.

The murders occurred on December 13, 2003, at about 8:30 p.m. At trial, Reu-El testified that he left for Chicago on the afternoon of December 12. He claimed that Abram saw him at 11:45 p.m. on December 13 and that other witnesses saw him in Chicago the following morning. The *Van Cleave* court concluded that the lack of those other

9

witnesses didn't prejudice Reu-El. Given that finding, and because the only support for a claim that Abram saw Reu-El in Chicago on December 13 comes from Reu-El, we conclude that Reu-El has not demonstrated prejudice from the lack of Abrams' testimony.

2. *Louis Randall*

Randall was a police detective who investigated this case for a time. On January 8, 2004, Randall interviewed Samuel Oatis about traveling to Chicago with Reu-El on several occasions. Randall's interview report summarized Oatis' conversation with him in the following manner:

"On Thursday January 8, 2004 Det. Volle and I went to 1123 N. 5th Street, Kansas City[,] Kansas (Parole Office) to meet with Mr. Overton and Mr. Oatis. We met with Mr. Oatis in a conference room and I explained why I wanted to speak with him. Mr. Oatis initially told me that he had not been in Chicago at any time with Mr. Cheatham. I then explained to Mr. Oatis that I knew that he had gone to Chicago with Mr. Cheatham in September. Mr. Oatis denied that and I showed him the photocopy of a ticket from Southwestern Airlines for Mr. Oatis. I told him that we have one for Mr. Cheatham also for the same flight. Mr. Oatis then stated that he has gone to Chicago with Mr. Cheatham on several occasions. Mr. Oatis stated that his reason for going to Chicago was to see his father who has cancer.

"Mr. Oatis said that early in December he and Mr. Cheatham got into an argument about Nino (Sophia Lopez-Johnston). He said that Mr. Cheatham thought he was trying to date her. Mr. Oatis said that he and Mr. Cheatham have not talked since then.

"I asked Mr. Oatis if he had seen Mr. Cheatham in Chicago this last time he was there. Mr. Oatis initially stated that Mr. Cheatham was not in Chicago while he was there this last time. *Mr. Oatis stated that he was in Chicago around December 13th or 14th of 2003.* He said that he was there for 2 or 3 days. I told Mr. Oatis that Mr. Cheatham was

10

there also. *Mr. Oatis said that he did not see Mr. Cheatham while he was there.* He said that Mr. Cheatham usually stays with his cousin Treble Abrams." (Emphases added.)

Reu-El's argument about Randall is based on a misinterpretation of Randall's report. Randall says, "Mr. Oatis stated that he was in Chicago around December 13th or 14th of 2003." Reu-El suggests that the "he" in that sentence is Reu-El. But the context doesn't support that reading. Two sentences later, Randall tells Oatis "that Mr. Cheatham was there also," and Oatis replies "that he did not see Mr. Cheatham while he was there."

Reu-El has not shown that Randall had personal knowledge of Reu-El's whereabouts on the night of the murder, and Randall's interview with Oatis didn't shed light on that, either. Randall's statement does not provide Reu-El with an alibi that would have altered the course of his trial.

In sum, Reu-El has not shown prejudice from the claimed failures of his original trial counsel. Without a showing of prejudice, Reu-El is not entitled to relief.

B. *Counsel During Second Trial Proceedings*

While Reu-El's first initial direct appeal was pending before the Kansas Supreme Court, John Val Wachtel and Paul R. Oller entered appearances on behalf of Reu-El in the district court. Reu-El contends that these attorneys, who represented him in the second trial proceedings, also provided ineffective assistance. As we understand his allegations of deficient representation against Wachtel and Oller, Reu-El claims (1) that these attorneys failed to investigate and preserve the testimony of his "alibi" witnesses before they died; (2) that these attorneys failed to obtain dismissal of the criminal charges due to the impairment to the defense; (3) that they induced him to enter pleas by representing that he would receive the death penalty if he went to trial; and (4) that he

11

was induced to enter the plea because of the prospect of receiving the death penalty, a penalty that his attorneys should have successfully attacked as unconstitutional.

   1. *Failure to Investigate*

Reu-El alleges that Wachtel and Oller provided deficient representation in failing to investigate Abram and Randall before the witnesses died. Because Reu-El entered a plea, however, the lack of investigation is material only if the lack of preparation of a defense induced Reu-El to enter a plea he otherwise would have rejected. Reu-El has not made that showing. But even if we fully consider this claim that Wachtel and Oller provided inadequate representation by failing to investigate Abram and Randall as potential witnesses, the record doesn't support such a claim.

 Wachtel and Oller came on board to represent Reu-El on March 4, 2010, and March 8, 2010, respectively, after the *Van Cleave* hearing in the district court but before the appeal was argued in the Kansas Supreme Court. Since the evidentiary portion of the *Van Cleave* proceeding had already concluded—and Reu-El's claim of entitlement to a new trial hadn't been decided—Wachtel and Oller had no reason to investigate potential witnesses in support of Reu-El's allegations of ineffective assistance of trial counsel.

Moreover, by the time Wachtel and Oller entered the case, the district court had denied Reu-El a new trial based on ineffective assistance of counsel. Until the Kansas Supreme Court reversed the district court and ordered a new trial on January 25, 2013, Wachtel and Oller had no reason to investigate potential witnesses in preparation for trial. There is nothing in the record to establish that Wachtel and Oller should have reasonably foreseen that either Abram or Randall would not survive to testify at a later trial (even assuming that they could have predicted that the Kansas Supreme Court would grant a retrial). Abram died on April 3, 2010, and Randall died on September 26, 2011. By the

12

time the Kansas Supreme Court ordered a new trial in 2013, both witnesses had long been deceased, and Wachtel and Oller could not interview them.

## 2. *Seeking Dismissal of Charges*

Reu-El contends that the prejudice caused by the loss of two defense witnesses while his appeal was pending constituted a violation of his due process rights. The Due Process Clause of the Fourteenth Amendment requires the government to provide, at a minimum, notice and an opportunity to be heard at a meaningful time and in a meaningful manner before it may deprive a person of life, liberty, or property. The right to a meaningful hearing encompasses the right to have the hearing within a reasonable time. See *In re Care & Treatment of Ellison*, 305 Kan. 519, 526-27, 385 P.3d 15 (2016). Due process also encompasses the right to an expedient appeal. See *State v. Bussart-Savaloja*, 40 Kan. App. 2d 916, 920, 198 P.3d 163 (2008); *Harris v. Champion*, 15 F.3d 1538, 1558 (10th Cir. 1994).

Even if we assume, as Reu-El suggests, that dismissal is the proper remedy for a due-process violation arising from inordinate delay in retrying him, Reu-El cannot establish ineffective assistance of counsel by Wachtel and Oller for a failure to pursue dismissal for violation of his due-process rights. Those attorneys moved to dismiss the criminal charges for a violation of due process, but the district court denied the motion. Reu-El then chose to enter a plea. By entering the plea, Reu-El waived any prior, non-jurisdictional defects in the proceedings. See *State v. Holt*, 298 Kan. 531, 539, 314 P.3d 870 (2013); *State v. Rodriguez*, 254 Kan. 768, Syl. ¶ 2, 869 P.2d 631 (1994); *United States v. DeVaughn*, 694 F.3d 1141, 1145-46 (10th Cir. 2012); *Gomez v. Berge*, 434 F.3d 940, 942-43 (7th Cir. 2006).

13

While some limited exceptions to this waiver rule have been recognized, such as when the due-process claim is for vindictive prosecution, see *DeVaughn*, 694 F.3d at 1146, we do not find any recognized exception that would fit Reu-El's due-process claim. And Reu-El has not cited any case in which a speedy-trial due-process argument has been preserved after a plea. Because the due-process claim here is equivalent in most respects to a constitutional speedy-trial claim, we conclude that the entry of a plea would waive the due-process claim just as it waives a speedy-trial claim. See *Holt*, 298 Kan. at 539; *Rodriguez*, 254 Kan. at 772.

At least in theory, Reu-El's due-process argument could still be relevant, even after a plea, if he alleged that his attorneys specifically advised him that the due-process argument would survive the entry of a no-contest plea. But Reu-El has not made that claim. And the plea agreement specifically stated that by entering a no-contest plea, Reu-El was waiving the right to seek a new trial based on legal error and the right to appeal his conviction. At the plea hearing, Reu-El indicated that he had read and understood the plea agreement, and the district court told Reu-El that he would waive any issues related to the conviction.

We note too that Reu-El's argument with respect to due process is essentially a form of double-jeopardy claim, and that was something the Kansas Supreme Court addressed in his direct appeal from his plea. In that appeal on the denial of his motion to withdraw plea, the Kansas Supreme Court noted that a plea generally waives a defendant's right to appeal the judgment of conviction on grounds other than jurisdiction or the fundamental legality of the proceedings. See *Reu-El*, 306 Kan. 460, Syl. ¶ 5. The court specifically noted that a no-contest plea waives a double-jeopardy claim, 306 Kan. at 475, before upholding the district court's conclusion that Reu-El was not misled about his rights when he entered his no-contest plea. 306 Kan. at 477-79.

14

### 3. *Indication That the Death Penalty Would Be the Likely Result of Trial*

Reu-El suggests that he was coerced into entering a plea by the loss of these defense witnesses and his counsel's statement that he did not want to see Reu-El die. While the prospect of the death penalty is clearly a terrifying one, defense counsel does not provide ineffective assistance by telling a criminal defendant about the possible consequences of a conviction. Since Reu-El had been convicted by a jury in his first trial, and that jury had returned a unanimous verdict in favor of the death penalty, defense counsel could reasonably believe that the death penalty was likely if Reu-El was convicted in the second trial. Especially when the evidence against the defendant is strong, encouraging a criminal defendant to accept a plea offer in which the threat of death is removed is objectively reasonable legal advice.

But even if the advice weren't reasonable, Reu-El's suggestion that this advice coerced him to enter the no-contest plea is substantially undercut by the two pro se motions Reu-El filed seeking to withdraw his pleas. While he extensively challenged the knowing and voluntary nature of the pleas based upon counsel's advice, he never mentioned counsel's statement that he did not want to see Reu-El die. The omission of this evidence in Reu-El's motions is some indication that the statement did not weigh heavily in Reu-El's decision to enter a plea. Moreover, the Kansas Supreme Court extensively examined the voluntariness of Reu-El's plea in his direct appeal. The court noted that Reu-El relied on different bases for withdrawing his plea in the district court and on appeal, weighing the assertions accordingly. *Reu-El*, 306 Kan. at 480-81.

4. *Prospect of the Death Penalty*

Reu-El further contends that his plea should be withdrawn because it was induced by the prospect of the death penalty, which he says is unconstitutional. Three procedural obstacles preclude appellate review of this contention.

First, Reu-El did not raise the issue in the district court. His motion for habeas corpus relief under K.S.A. 60-1507 did not challenge the constitutionality of the death penalty as a basis for setting aside his plea.

Typically, an issue may not be considered when it is raised for the first time on appeal. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). Kansas appellate courts have recognized exceptions to this rule, but, in recent years, we have usually not done so without compliance with Kansas Supreme Court Rule 6.02(a)(5) (2019 Kan. S. Ct. R. 35), which requires "an explanation why the issue is properly before the [appellate] court" even though it was not raised below. See *State v. Godfrey*, 301 Kan. 1041, 1044, 350 P.3d 1068 (2015). Reu-El has not provided such an explanation.

Second, even if this court considered Reu-El's argument for the first time on appeal, important issues like the constitutionality of the death penalty ordinarily aren't considered in collateral proceedings like this habeas action challenging the representation provided by Reu-El's attorneys. "[A] K.S.A. 60-1507 motion cannot serve as a vehicle to raise an issue that should have been raised on direct appeal, unless the movant demonstrates exceptional circumstances excusing earlier failure to bring the issue before the court." *Rowland v. State*, 289 Kan. 1076, 1087, 219 P.3d 1212 (2009). Reu-El has not shown a change in the law regarding the constitutionality of the death penalty or some other exceptional circumstance that would justify considering that issue here.

16

Third, Reu-El asserts that he was induced to enter a plea by the prospect of an unconstitutional penalty—death—but fails to support the argument by demonstration that the statutes authorizing the death penalty are unconstitutional on their face or as applied to him. Wachtel and Oller raised several challenges to the constitutionality to the death penalty; Reu-El raised additional challenges pro se. But in this appeal, Reu-El does not demonstrate which of these arguments or some argument not raised should have resulted in a declaration of the unconstitutionality of the death penalty.

In sum, even if we consider on its merits a claim that Wachtel and Oller provided ineffective assistance of counsel by not getting the death penalty declared unconstitutional, that claim has no merit. Wachtel and Oller challenged the constitutionality of the death penalty on multiple grounds. Reu-El has not explained how these efforts were legally deficient. Given the district court's rejection of these challenges, Wachtel and Oller faced the choice of proceeding to trial in order to preserve the challenges, which might then fail on appeal, or encouraging Reu-El to accept the State's offer to refrain from seeking the death penalty if Reu-El pleaded no-contest to capital murder and attempted first-degree murder. In light of the strength of the State's case, Reu-El has not shown that Wachtel's and Oller's recommendation to accept the plea was anything other than objectively reasonable legal advice.

C. *Counsel During Direct Appeal*

Reu-El also challenges the legal representation he received in the direct appeal from the district court's denial of his motions to withdraw his pleas. He argues that his appellate counsel, Meryl Carver-Allmond, provided deficient representation because she didn't attack the constitutionality of the death penalty or argue that any retrial would violate his due-process rights.

17

## 1. *Death Penalty*

As discussed, we have already concluded that Reu-El is procedurally barred from raising a constitutional challenge to the death penalty in this collateral proceeding. Even if the issue is considered on its merits with respect to Carver-Allmond, however, Reu-El cannot demonstrate objectively deficient legal representation. That's because Reu-El had not been sentenced to death in the judgment Carver-Allmond was appealing from—she handled the appeal after Reu-El pleaded no contest and lost in the district court on motions to withdraw his plea. We see no basis on which Carver-Allmond could have argued that Reu-El would have had standing in that appeal to challenge the constitutionality of the Kansas death penalty; Reu-El hadn't received a death-penalty sentence. See *Houston v. Roe*, 177 F.3d 901, 906-07 (9th Cir. 1999).

Reu-El would have had standing only to argue that the threat of the death penalty induced his plea. Admittedly, that's an argument Carver-Allmond did not make in Reu-El's direct appeal. But we have already noted that Reu-El did not make this claim in the motions he filed in the district court to set aside his plea. So Carver-Allmond would have needed both a basis to get around the normal rule that a new issue can't be raised on appeal and a meritorious argument that the death penalty was unconstitutional and unenforceable. Because Reu-El has not shown that such arguments were available to her, he has not shown deficient representation on this point.

## 2. *Due Process*

With respect to the due-process argument, we can easily conclude that Reu-El is not entitled to relief on a claim that Carver-Allmond provided deficient representation by failing to raise that issue. The reason is simple: by entering his pleas, Reu-El waived the due-process argument. See *Holt*, 298 Kan. at 539; *Gomez*, 434 F.3d at 943. So that issue

18

could not be raised—and would not become relevant—until Carver-Allmond first succeeded in getting a reversal of the district court's denial of Reu-El's motion to withdraw his plea. That was properly the focus of the appeal Carver-Allmond handled, not the due-process claim.

We affirm the district court's judgment.