No. 103,532

STATE OF KANSAS, *Appellee*, v. DEREK JOHN HOLT, *Appellant*.

(314 P.3d 870)

Opinion filed December 20, 2013.

*Richard Ney*, of Ney & Adams, of Wichita, argued the cause and was on the briefs for appellant.

*Terri L. Johnson*, county attorney, argued the cause, and *Derek Schmidt*, attorney general, was with her on the brief for appellee.

The opinion of the court was delivered by

ROSEN, J.: Derek John Holt appeals from his conviction and sentence for aggravated indecent liberties with a child. Because the record on appeal is incomplete and cannot be reconstructed effectively, this court is unable to provide the meaningful review that due process requires. We reverse the conviction and remand for a new trial.

L.F. was born in June 2003. Her natural parents are Jason F. and Nicole C. After Jason and Nicole separated, L.F. and her older brother Z.F. resided with Nicole.

Jason began living with Sheena Reed in November, 2005. In April 2006, L.F. and Z.F. started residing with Jason and Sheena on a temporary basis until Nicole could find employment.

In 2006, Nicole began to date Holt and, starting in July of that year, the two resided together. L.F. and Z.F. would spend every other weekend, from Friday through Sunday, with Nicole and Holt.

One Saturday in August 2006, Jason and Sheena went to Nicole and Holt's house to check on the children. While there, according to Sheena, L.F. reported that someone had touched her "pee-pee" and that it hurt. Sheena and Nicole took L.F. to a bathroom, where they observed that L.F.'s pubic area looked "a little red." Sheena suspected that L.F. had a little rash and left her with Nicole and Holt.

On August 25, 2006, Jason filed a motion seeking primary residential custody of the children and modification of the child support plan so that he would receive support payments from Nicole. Nicole's mother, Janet C., described the relationship between Jason and Nicole as degenerating into a "head on battle."

On September 17, 2006, Jason and Sheena observed L.F. with her hands in her pants, and L.F. said she had a secret. Sheena offered L.F. a sucker if she would tell her secret. L.F. cried for a while, and "finally out of nowhere" L.F. said "someone touched my pee-pee." L.F. initially refused to say who had touched her. When Sheena started asking her specific names of male family members, L.F. replied that each of them was not the person. Finally, Sheena asked her again who did it, and L.F. said it was Holt.

The next day, Jason and Sheena took L.F. to a physician, who apparently said that he could see no sign of anything unusual, and L.F. made no reference to anyone touching her. Within a couple of days, Jason's mother, Mary Pillon, took L.F. for a car ride and asked L.F. to talk to her about her secret. L.F. reportedly responded, "I can't tell you because Derek would be mad." Pillon told L.F. that she was sure Derek wouldn't mind, and L.F. allegedly said, "[H]e played with my tu-tu." When Pillon asked what her "tu-tu" was, L.F. pointed to her vagina.

On September 20, 2006, Jason contacted SRS and reported L.F.'s allegations. During an interview at Jason and Sheena's house, L.F. told an SRS caseworker, "Derek stuck his finger in my pee-pee." Upon further inquiry, L.F. recounted that she had been sleeping, woke up, and told Derek to stop, but he said no. L.F. then said that if he didn't stop, she would tell her mother. On the caseworker's question of where her "pee-pee" was, L.F. pointed to her vagina.

The caseworker reported the results of her interview to the Fort Scott police department. At a subsequent forensic interview, L.F. reported that Holt had "stabbed her with a knife in the pee-pee." She also reported that Nicole was present during the incident and told Holt to "stop it."

A subsequent medical examination by a nurse revealed what the nurse interpreted to be a healed laceration on L.F.'s vagina. Another examination was conducted 5 days later, and the nurse again saw signs of a laceration. The nurse considered the results of the examination to be abnormal and consistent with a history of "highly suspected" sexual abuse. The nurse opined that the lacerations were between 3 days and more than a year old. At trial, a forensic nurse testified that the photographs from the second examination did not indicate abuse and showed notching, which is a normal variant in the appearance of a child's vagina. This nurse testified that there was no evidence of lacerations, bruising, or other trauma, and questioned the thoroughness of the examining nurse's procedures and photographic records.

L.F. began participating in counseling sessions with Kay Spaniol, a clinical social worker who specializes in child sexual abuse. Over

the course of 22 counseling sessions, L.F. told Spaniol that Holt had touched her vagina with a knife and had threatened to kill her if she told anyone about what was going on. L.F. also reported that "Derek made her touch him in the wiener with a knife." She said this happened twice, and she also reported that it happened 10 times; Spaniol interpreted a child's understanding of "ten" to refer to something happening more than once and a lot. L.F. also stated during one session that Holt cut her pee-pee with a knife and tried to put his pee-pee in her mouth. L.F. reported other incidents, with occasional inconsistencies about where and when certain things had taken place.

On January 5, 2007, the State filed a complaint alleging that Holt had committed rape and aggravated indecent liberties with a child. The State later amended the complaint to make the charges off-grid felonies: one count of rape under K.S.A. 21-3502(a)(2) and one count of aggravated indecent liberties with a child under K.S.A. 21-3504(a)(3)(A).

At trial, L.F. testified that Holt had touched her on parts of her body that people are not supposed to touch. She testified that Holt had touched her with his hand but not with anything else and that Holt had told Nicole to hold her down or he would hurt Nicole bad with a knife. L.F. told the jury that when Holt touched her it hurt and it "feels like a knife." She reported that Holt had touched her with his hand two different times and Nicole was present both times. She later testified that Nicole was only present at one of the incidents. She also reported that Holt made her touch him in "his private spot" with her hand. L.F. did not remember telling anyone that Holt had ever stabbed her with a knife.

The jury was unable to reach a verdict on Count I, rape, but found Holt guilty of Count II, aggravated indecent liberties with a child. The trial court denied Holt's motion for a guidelines sentence and sentenced him to life imprisonment with a mandatory minimum of 25 years.

Holt raises seven issues on appeal. Because we find dispositive two issues involving the adequacy of the appellate record, we initially turn to those.

On October 29, 2008, the trial court held a hearing on several pretrial motions filed by both the State and Holt. Holt's sister, Misty Bronson, testified in support of at least one of the motions. Shortly after direct examination began, the following annotation appears in the record:

"(I HAVE NO RECORD OF PART OF THIS TESTIMONY OF MISTY BRON-SON. INADVERTENTLY THERE WAS A MALFUNCTION WITH THE RE-CORDING EQUIPMENT DUE TO MECHANICAL AND/OR PERSONAL CAUSES AND [THAT PART OF THE RECORD] IS NOT AVAILBLE FOR TRANSCRIPTION PURPOSES, THEREFORE, I AM UNABLE TO PRO-DUCE THAT PORTION OF THE TESTIMONY.) (Below is where I was able to pick up some questions and answers of Misty Bronson.)"

The transcript then contained an additional 1½ pages of direct examination, followed by cross-examination and redirect examination. The transcript then set out the court's ruling on a motion by the State and showed that the court took a brief recess. The transcript concluded with this annotation:

"(I HAVE NO RECORD OF THE COURT'S ORDERS FOR THE MOTIONS THAT WERE FILED BY STATE AND DEFENSE [AND] WHAT THE COURT GRANTED OTHER THAN MY PERSONAL HANDWRITTEN NOTES. INADVERTENTLY THERE WAS A MALFUNCTION, AGAIN, WITH THE RECORDING EQUIPMENT DUE TO MECHANICAL AND/ OR PERSONAL CAUSES AND [that part of the record] IS NOT AVAILABLE FOR TRANSCRIPTION PURPOSES, THEREFORE I AM UNABLE TO PRODUCE THAT PORTION OF THE RECORD.)"

After appellate proceedings began, the problems with the hearing transcript came to light. On Holt's motion, this court stayed briefing and remanded the case to the trial court for the purpose of reconstructing the record under Supreme Court Rule 3.04(a) (2013 Kan. Ct. R. Annot. 23). This court also issued an order directing the court reporter, Sandra McLeod, to appear and show cause why she should not be held in indirect contempt of court. There is no indication that McLeod ever appeared or responded to the order of this court, and it appears that McLeod is no longer employed by the State of Kansas as a court reporter and may have left the state.

The trial court held a hearing on Holt's motion to reconstruct the record, with the prosecuting attorney, Holt's trial attorney, and Holt's appellate attorney participating. The reconstruction hearing took place more than 4 years after the motions hearing in question, and neither the parties nor the trial judge had clear memories or extensive notes about what transpired at the hearing. Trial counsel for both parties were in general agreement that no additional witnesses were called and also agreed on the general nature of their arguments to the trial court at the motions hearing.

The parties agreed that one of the topics considered at the October 29, 2008, hearing was a detailed motion filed by Holt seeking an independent psychological evaluation of L.F. Not only were the arguments by the parties and the decision by the court not transcribed, but the memories of the hearing participants were vague and incomplete. No written order was filed, and the trial judge could not recall whether he ruled on the motion that day; notes by Holt's attorney suggested that the matter was taken under advisement. The trial attorneys explained what they would typically argue with such a motion, but they had little in the way of specific memories of what they argued in this particular case. The prosecutor was able to recall the general nature of the arguments, which she set out in an affidavit.

Although all the participants at the hearing agreed that the motion was denied at some point in time, the trial judge conceded that there was no record of the basis for his decision. The prosecutor's affidavit concluded by stating: "I do not have notes of the Court's ruling but believe that the Court found that the Defendant did not present a compelling reason for an independent psychological evaluation and denied the motion."

A trial court's decision on a motion requesting that the victim undergo an independent psychological evaluation is reviewed for abuse of judicial discretion. *State v. Rojas-Marceleno*, 295 Kan. 525, 530, 285 P.3d 361 (2012). In determining whether the trial court abused its discretion, this court considers the totality of the circumstances, including these nonexclusive factors:

"(1) whether there was corroborating evidence of the complaining witness' version of the facts, (2) whether the complaining witness demonstrates mental instability,

(3) whether the complaining witness demonstrates a lack of veracity, (4) whether similar charges by the complaining witness against others are proven to be false, (5) whether the defendant's motion for a psychological evaluation of the complaining witness appears to be a fishing expedition, and (6) whether the complaining witness provides an unusual response when questioned about his or her understanding of what it means to tell the truth." *Rojas-Marceleno*, 295 Kan. at 531.

In moving for an independent evaluation, Holt pointed out inconsistencies in L.F.'s statements to various people about what Holt had allegedly done, who was present when he committed the transgressions, and how many times the abuse had occurred. Holt suggested that L.F.'s reports might have been the product of coaching or of reconstructed dreams or fantasies.

These arguments created a credible basis for the motion. It then falls on this court to determine whether the trial court abused its discretion in denying the motion, focusing on how the trial court applied the various nonexclusive factors set out in *Rojas-Marceleno*.

Unfortunately, the record on appeal does not allow us to make such a determination. We simply cannot ascertain what the basis of the trial court's ruling was, and we therefore cannot ascertain whether the trial court abused its discretion. This is not the fault of the trial court or the parties; it is the consequence of a rare breakdown in the transcription process coupled with the absence of any meaningful recollection of the motion arguments and, more importantly, the basis of the motion's resolution.

Adequate and effective appellate review is impossible without a trial transcript or an "adequate substitute." *Bounds v. Smith*, 430 U.S. 817, 822, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977). In the context of a criminal prosecution, due process requires a reasonably accurate and complete record of the trial proceeding in order to allow meaningful and effective appellate review. See *Entsminger v. Iowa*, 386 U.S. 748, 752, 87 S. Ct. 1402, 18 L. Ed. 2d 501 (1967); *Kheireddine v. Gonzales*, 427 F.3d 80, 84 (1st Cir. 2005). The findings below must be preserved in such a way that adequate appellate review is possible. See *Specht v. Patterson*, 386 U.S. 605, 610, 87 S. Ct. 1209, 18 L. Ed. 2d 326 (1967). "Because effective appellate review would be substantially hampered if the trial transcript were materially in error, it stands to reason, therefore, that this substan-

tive due process right would be meaningless unless it also embraced the right to a reasonably accurate transcript . . . ." *Curro v. Watson*, 884 F. Supp. 708, 719 (E.D. N.Y. 1995).

When legitimate claims that have a substantial foundation based on the available record are not susceptible to appellate review because the transcript is manifestly incomplete or inaccurate, the proper remedy is to reverse and remand for a new trial. See, *e.g.*, *United States v. Wilson*, 16 F.3d 1027, 1031 (9th Cir. 1994).

We are aware of the challenges and burdens of retrying any case, and we acknowledge the stress that a second trial can place on a young victim and the difficulty in bringing witnesses back so long after the events in question. As demonstrated by the content of Holt's motion, however, his request for an independent psychological evaluation of L.F. was potentially critical to his defense. The constitutional right to due process and its vital protections, especially in a case involving serious allegations and severe penalties, dictate this result. We accordingly reverse and remand for a new trial at the discretion of the State.

We caution that the mere fact that a portion of a proceeding has been reconstructed is not grounds in itself for reversal. A defendant does not have a constitutionally protected right to a totally accurate transcript of the criminal proceedings. See, *e.g.*, *Tedford v. Hepting*, 990 F.2d 745, 747 (3d Cir.), *cert. denied* 510 U.S. 920 (1993); *Robinson v. Smyth*, 258 Fed. Appx. 469, 471 (3d. Cir. 2007) (unpublished opinion). A record that is incomplete but that involves no substantial or significant omissions does not require reversal. See, *e.g.*, *United States v. Cashwell*, 950 F.2d 699, 703 (11th Cir. 1992); *United States v. Selva*, 559 F.2d 1303, 1306 n.5 (5th Cir. 1977). Appellants seeking reversal on the grounds that they are denied due process because of an inaccurate or incomplete transcript must make the best feasible showing possible that a complete and accurate transcript might have changed the outcome of the appeal. *Ortiz-Salas v. I.N.S.*, 992 F.2d 105, 106 (7th Cir. 1993); see *Al-Ghorbani v. Holder*, 585 F.3d 980, 992 (6th Cir. 2009).

Because the issues revolving around the incomplete transcript are dispositive, we will address only briefly other issues raised in the appeal. The question of whether the trial court made adequate

findings relating to the qualifications of appointed counsel is moot. The issue of compliance with statutory speedy trial requirements is also moot, because Holt and his trial counsel expressly waived the argument. By waiving the issue below, Holt generated no record for this court to review on appeal. Speedy trial requirements, like some other statutory and constitutional rights, may be waived. See *State v. Rodriguez*, 254 Kan. 768, Syl. ¶ 2, 869 P.2d 631 (1994) (guilty plea waives right to speedy trial); see also *State v. Thomas*, 291 Kan. 676, 691, 246 P.3d 678 (2011) ("close call" whether defendant waived speedy trial right by changing theory of how days were calculated).

Holt also challenges the adequacy of the reasonable doubt instruction. This issue was resolved in *State v. Herbel*, 296 Kan. 1101, 1124, 299 P.3d 292 (2013), where we concluded that, while the older PIK instruction was not preferred, it was legally appropriate. Although the issue is moot, we recommend that courts apply PIK Crim. 3d 52.02.

Holt's remaining two issues are also moot. There is no reason for this court to review for error whether testimony violated an order in limine, and we have no reason to address at this time whether a court may disregard written statements supporting a downward sentencing departure while considering written statements opposing departure.

Reversed and remanded.

MORITZ, J., not participating.

DANIEL D. CREITZ, District Judge, assigned.