NOT DESIGNATED FOR PUBLICATION

No. 126,254

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

TERRY L. ANTALEK,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; JEFFREY E. GOERING, judge. Submitted without oral argument. Opinion filed June 14, 2024. Affirmed.

*Kristen B. Patty*, of Wichita, for appellant.

*Robin L. Sommer*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.


Before COBLE, P.J., GREEN, J., and TIMOTHY G. LAHEY, S.J.

PER CURIAM: Terry L. Antalek appeals from the district court's denial of his pro se K.S.A. 60-1507 motion raising two issues. First, Antalek contends his direct appeal counsel was ineffective by failing to address a largely garbled, and at times incoherent, transcript of jury selection. He argues that the district court erred by finding his claim to be conclusory and dismissing it without an evidentiary hearing. Second, Antalek asserts that his trial attorney was ineffective for failing to obtain an expert witness to support his involuntary intoxication defense. He contends the district court erred when it concluded, following an evidentiary hearing, that the attorney's decision to forgo the voluntary

intoxication defense fell within the wide range of reasonable professional assistance. After carefully considering the arguments and the record before us, we find no error with the district court's decision and affirm its denial of Antalek's K.S.A. 60-1507 motion.

FACTUAL AND PROCEDURAL HISTORY

In December 2009, a jury convicted Antalek of attempted first-degree murder, aggravated assault, two counts of aggravated criminal sodomy and acquitted him of rape. He was sentenced to 765 months in prison, and this court affirmed his convictions and sentence. *State v. Antalek*, No. 104,494, 2012 WL 2148162, at *3, 11 (Kan. App. 2012) (unpublished opinion), *rev. denied* 296 Kan. 1131 (2013). The full facts surrounding those convictions are found in that opinion and are not repeated here.

We provide a thumbnail sketch of the facts for context. Antalek and K.A. were married and had two children together. A few weeks before the crimes occurred, Antalek was hospitalized at Osawatomie State Hospital for an attempted suicide. Upon his release, Antalek checked K.A.'s cell phone and discovered that she was messaging a man with whom both Antalek and K.A. were intimately familiar. After some arguing, K.A. told Antalek she wanted a divorce. Later that day, Antalek woke K.A. from sleeping, pulled her clothes off, and demanded they have sex. He threatened to break her neck if she refused, and then, according to K.A., Antalek raped her. She testified that he also forced her to engage in oral and anal sodomy. The following morning, after dropping their children off at school and returning home, Antalek became "inflamed" because K.A. had threatened to file rape charges, and he punched her in the mouth outside their home. K.A. tried to run away, but Antalek grabbed her around the neck and dragged her back inside into their bedroom, forcibly removed her clothes, and climbed on top of her. Antalek told K.A. that he was going to chop her into pieces and stabbed her in the neck several times, including a deep injury that lacerated her jugular vein. Despite her injuries, she survived.

Antalek chose to represent himself partway through his trial, and he chose to testify. While Antalek adamantly denied the rape allegations, he admitted stabbing K.A. three times in the neck and expressed that he wanted her to think she was going to die. He also admitted that he waited until the police arrived to stab her. He told police that he was trying to kill K.A., and he admitted that he provided her no aid after stabbing her. Antalek told the jury, "I think for maybe a split second, yeah, maybe I intended to kill my wife."

*Antalek's K.S.A. 60-1507 motion*

The K.S.A. 60-1507 motion, which Antalek appeals here, was brought on March 17, 2014. Antalek filed this motion pro se and raised claims of ineffective assistance of counsel against his trial attorney John B. Sullivan and his direct appeal attorney Shawn E. Minihan. He continues two of those claims on appeal:

- Antalek asserted his direct appeal attorney was ineffective because he either did not read the corrupted voir dire transcript or read it and failed to take any action to correct it.

- Antalek asserted his trial attorney was ineffective for failing to obtain an expert witness to support his requested involuntary intoxication defense.

The district court did not appoint an attorney to represent Antalek on this K.S.A. 60-1507 motion until November 2015. Apparently, a lengthy delay in resolution of Antalek's K.S.A. 60-1507 motion occurred because the parties agreed to stay this matter until his other motions were resolved by the district and then the appellate courts. Antalek had several different attorneys appointed during the pendency of this matter, each of whom filed pretrial questionnaires. On February 19, 2019, Mark Sevart was appointed to represent Antalek and represented him until this appeal. On June 22, 2022, the State filed

3

its pretrial statement in response to Antalek's arguments, and the court took the matter under advisement.

On March 12, 2023, the district court found that the only issue warranting an evidentiary hearing was whether trial counsel was ineffective for failing to take action to pursue an involuntary intoxication defense, such as obtain evidence and consult with Dr. Ann Blake Tracy about the effect of medications Antalek was prescribed at Osawatomie State Hospital.

*Evidentiary hearing*

The district court held an evidentiary hearing on the involuntary intoxication issue on March 15, 2023. Sevart, the attorney appointed to represent Antalek on this K.S.A. 60-1507 motion, argued that because Antalek was prescribed medications while hospitalized—and then harmed K.A. shortly after being released—the trial should have been a battle of the experts as to Antalek's diminished capacity. But Antalek's trial attorney, Sullivan, failed to secure an expert. At the hearing, Antalek called Sullivan as a witness while the State called Shannon Wilson, the prosecutor in Antalek's case. Antalek waived his right to be present at this hearing.

Sullivan testified at length about his decision not to pursue an involuntary intoxication defense. In sum, he asserted that he would have raised the defense if he felt it was viable, but he chose not to pursue it because he had no expert to support it.

Sullivan confirmed that Antalek was released from the hospital with various medications. He recalled that Antalek wanted to argue "[t]hat the medication that they had given him at Osawatomie State Hospital had more or less caused him to commit the acts that he was charged with," known as an involuntary intoxication defense. Sullivan noted his concerns that Osawatomie hospital staff would have a conflict of interest in

4

testifying on Antalek's behalf regarding the involuntary intoxication defense because it could expose Osawatomie to liability for having released Antalek.

Still, Sullivan recalled that Antalek had found Dr. Tracy's name and suggested her as a potential expert witness for the defense. Dr. Tracy asserted that Selective Serotonin Reuptake Inhibitors (SSRIs), like Celexa—which Antalek was prescribed—"were quite dangerous and could make people psychotic when they took them." Sullivan explained that he investigated Dr. Tracy as a potential expert witness, discovered that her views were not widely accepted, and that she was an "'outlier.'" He believed it would be difficult to get the Board of Indigents' Defense Services (BIDS) to pay for her or someone who shared her opinion.

Sullivan stated that Dr. Goodman, a psychologist or psychiatrist from Hutchinson, was on the BIDS list and had been a thorough expert in these types of cases. Sullivan tried a diminished capacity case in front of the same judge as this case and had Dr. Goodman testify. But Sullivan spoke to Dr. Goodman, who stated that he did not share Dr. Tracy's views and would not have testified in Antalek's favor. With no expert to support the defense, Sullivan decided not to pursue it.

Next, the court heard from Wilson, the prosecutor on Antalek's case. Wilson stated that she would have introduced evidence of Antalek's prior sex crimes had he pursued an involuntary intoxication defense.

Wilson explained that the State had filed a K.S.A. 60-455 motion to admit prior crimes evidence that Antalek had raped a 16-year-old girl, raped his ex-wife, and raped a woman in a parking lot. The State also wanted to admit evidence that Antalek tried to have K.A. murdered while Antalek was in jail. Wilson explained that she decided not to pursue the admission of this evidence but would have used it in her rebuttal if Antalek "pursued any sort of diminished capacity defense, or any sort of involuntary intoxication

5

defense." She explained that if Antalek argued he could not form the intent to kill or premeditate, she would have shown he tried to have K.A. killed from jail to demonstrate that he did form that intent.

Wilson recalled that she and Sullivan had lengthy conversations about the defense, and she "made it clear, including on the record, that if this defense was pursued, that I felt like that opened the door to those priors, as well as the pending solicitation of murder case." Sullivan, however, denied that this concerned him and stated that he would have used the defense if he felt it was viable. And when Antalek elected to represent himself at trial, Wilson confirmed she would have introduced such evidence if he had used the defense.

After hearing this evidence, the court concluded that Sullivan's decision not to argue an involuntary intoxication defense was not deficient. The court noted that Sullivan had investigated the defense and contacted Dr. Tracy as a potential expert witness but that BIDS would not approve her. And the BIDS-approved expert, Dr. Goodman, would not testify in Antalek's favor. The court added that Antalek decided to represent himself at trial, but he did not introduce any evidence on the involuntary intoxication defense. Further, had the defense been advanced, Sullivan knew the State would introduce Antalek's prior crimes evidence as rebuttal, meaning "there's good reasons not to run a defense that doesn't have the support of experts."

During the hearing, the court commented on the voir dire transcript issue. In sum, the court stated that while Antalek alleged that the copy of the transcript his attorney received was corrupted, he did not present any reason why jury selection was improper or even generally what appealable issues the transcript would reveal. The court added that "without knowing how the transcript was corrupted, it's difficult to know whether there was any prejudice to Mr. Antalek in the second prong." Thus, the court found that

Antalek's claim was conclusory and denied it without an evidentiary hearing. The court denied the remaining issues in Antalek's K.S.A. 60-1507 motion.

Antalek appeals.

ANALYSIS

A district court may resolve a K.S.A. 60-1507 motion in three ways:

"'First, it may determine that the motion, files, and records of the case conclusively show that the petitioner is entitled to no relief, in which case it will summarily deny the petitioner's motion. Second, the court may determine from the motion, files, and record that a substantial issue or issues are presented, requiring a full evidentiary hearing with the presence of the petitioner. Third, the court may determine that a potentially substantial issue or issues of fact are raised in the motion, supported by the files and record, and hold a preliminary hearing after appointment of counsel to determine whether in fact the issues in the motion are substantial.'" *Mundy v. State*, 307 Kan. 280, 301, 408 P.3d 965 (2018) (quoting *Lujan v. State*, 270 Kan. 163, 170-71, 14 P.3d 424 [2000]).

"'A movant has the burden to prove his or her K.S.A. 60-1507 motion warrants an evidentiary hearing; the movant must make more than conclusory contentions and must state an evidentiary basis in support of the claims or an evidentiary basis must appear in the record.' [Citation omitted.]" *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014). An evidentiary hearing is not an opportunity for a movant to conduct a fishing expedition so that he or she "might catch a fact that could lead to something favorable." *Stewart v. State*, 310 Kan. 39, 54, 444 P.3d 955 (2019).

Here, the district court followed two of these options. It resolved Antalek's argument that his appellate counsel was ineffective for relying on a corrupted voir dire transcript using the third option—by appointing K.S.A. 60-1507 counsel and holding a

7

nonevidentiary hearing. And the court followed the second approach—denying a claim after an evidentiary hearing—to resolve Antalek's argument that his trial attorney was ineffective for choosing not to pursue a voluntary intoxication defense. As we set out later, our standard of review is different for each option.

With the procedural avenues for addressing a K.S.A. 60-1507 motion established, the discussion now turns to the principles governing claims of ineffective assistance of counsel, which Antalek raises here.

The Sixth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, guarantees a criminal defendant the right to effective assistance of counsel. *State v. Evans*, 315 Kan. 211, 217-18, 506 P.3d 260 (2022); *Sola-Morales*, 300 Kan. at 882. When a defendant alleges ineffective assistance of counsel under K.S.A. 60-1507, the district court shall hold an evidentiary hearing on the motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." K.S.A. 2023 Supp. 60-1507(b); see Supreme Court Rule 183(f) and (g) (2024 Kan. S. Ct. R. at 241).

Courts assess claims of ineffective assistance of counsel under the two-prong test articulated in *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and adopted by the Kansas Supreme Court in *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985). A defendant must prove that "(1) counsel's performance was deficient and (2) counsel's deficient performance was sufficiently serious to prejudice the defense and deprive the defendant of a fair trial." *Edgar v. State*, 294 Kan. 828, Syl. ¶ 1, 283 P.3d 152 (2012); see *Khalil-Alsalaami v. State*, 313 Kan. 472, 526, 486 P.3d 1216 (2021) (same test applies to appellate counsel).

Under the first prong, a defendant—here, Antalek—must show that his attorney's representation "fell below an objective standard of reasonableness when considering the

totality of the circumstances." *Evans*, 315 Kan. at 218. This is not an easy task, since our analysis here is highly deferential and requires that every effort be made to eliminate the distorting effects of hindsight. We strongly presume that an attorney's conduct fell within the wide range of reasonable professional assistance. *Khalil-Alsalaami*, 313 Kan. at 486.

And under the second prong, we assess whether there is a reasonable probability that, absent counsel's errors, the result would have been different. *Evans*, 315 Kan. at 218. Here, Antalek must show that the outcome of his trial and his appeal would have been different but for his trial and appellate lawyers' errors. *Khalil-Alsalaami*, 313 Kan. at 485-86. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Edgar*, 294 Kan. 828, Syl. ¶ 1. Overwhelming evidence of guilt, among other factors, may lead a court to conclude that a defendant has failed to establish prejudice. See 294 Kan. at 838. "'A court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury.'" 294 Kan. at 838.

*The district court did not err by summarily dismissing Antalek's claim against his appellate attorney about the corrupted voir dire transcript.*

Antalek argues the district court erred in dismissing Antalek's claim against Minihan. Since the district court denied this claim "based only on the motion, files, and records after a preliminary hearing," our standard of review is de novo. *Grossman v. State*, 300 Kan. 1058, 1061, 337 P.3d 687 (2014).

As Antalek sees it, Minihan's performance was deficient either because he reviewed the corrupted transcript and took no action to address it or because he never read it. We assume, without deciding, that Minahan was deficient for failing to raise any issues on appeal about the corrupted transcript. See *Edgar*, 294 Kan. 828, Syl. ¶ 4 ("A

9

court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of alleged deficiencies."). Considering the entire record, Antalek fails to show that he was prejudiced by Minahan's performance.

The initial problem with Antalek's argument is that he fails to assert something more than a conclusory statement of prejudice, which is necessary to obtain an evidentiary hearing. See *Sola-Morales*, 300 Kan. at 881.

Regarding prejudice, Antalek's K.S.A. 60-1507 motion notes he was only required to show a "reasonable probability" of a different result, and he "believes he has met that burden." As the district court correctly found, Antalek failed to identify any possible error that occurred during jury selection that would have changed the outcome of his appeal. But on appeal, Antalek identifies for the first time specific potential errors that might have occurred during voir dire.

For example, Antalek suggests "[a] voir dire transcript *might* reveal that the prosecution engaged in purposeful discrimination on the basis of race in exercising peremptory challenges to strike prospective jurors," but he does not provide any facts or identify any witnesses who might support that possible occurrence. (Emphasis added.) He contends that the "assistant district attorney might have made comments constituting prosecutorial error, leading to a retrial." "The trial court *might* have wrongly limited the defendant's examination," and "[t]here *might* have been a discussion regarding whether to dismiss a juror for cause." (Emphases added.) These potential errors are pure conjecture for which Antalek fails to identify any witness or evidence to support. The only witness identified by Antalek to prove this claim is Minihan, who was not present for the actual voir dire. Antalek bears the burden to come forth with an evidentiary basis for his claims. Because he failed to do so, the district court was correct to summarily dismiss his motion.

To rebut the conclusory nature of his argument, Antalek maintains that any prejudice that arose from these alleged errors cannot be assessed without first reversing and remanding with instructions to order a corrected and certified voir dire transcript, "appoint[ing] counsel to determine if it reveals any appealable issues . . . and, if so, determine whether Antalek was prejudiced by Minihan's failure to raise those issues on direct appeal." Antalek identifies no applicable authority for doing so.

Antalek cites *State v. Holt*, 298 Kan. 531, 314 P.3d 870 (2013). But *Holt* is distinguishable. Holt appealed the district court's denial of his motion for an independent psychological evaluation of the victim. On appeal, it was discovered that the transcript of that proceeding was incomplete due to recording equipment malfunctions. As such, our Supreme Court stayed briefing and remanded the case to the district court to reconstruct the record. 298 Kan. at 535. The record could not be reconstructed. The Supreme Court concluded that—because Holt's arguments about why the district court abused its discretion in denying his motion were credible—it could not decide the appeal absent a transcript explaining the district court's reasoning. 298 Kan. at 536-39. Still, the *Holt* court cautioned that "the mere fact that a portion of a proceeding has been reconstructed is not grounds in itself for reversal. A defendant does not have a constitutionally protected right to a totally accurate transcript of the criminal proceedings. A record that is incomplete but that involves no substantial or significant omissions does not require reversal. [Citations omitted]." 298 Kan. at 538.

Unlike in *Holt*, where our Supreme Court found that Holt's arguments about why the district court abused its discretion in denying his motion were credible, we do not find that Antalek has raised any credible arguments about an actual error during jury selection. Furthermore, we are reviewing summary dismissal of a K.S.A. 60-1507 motion, which has a completely different set of standards than were applied at the trial court and on appeal in *Holt*. Antalek's position is not aided by this case.

11

Antalek also directs our attention to a Seventh Circuit Court of Appeals opinion, *Ortiz-Salas v. I.N.S.*, 992 F.2d 105, 106 (7th Cir. 1993). There, Ortiz was denied relief from deportation by an immigration judge whose decision was affirmed by the Board of Immigration Appeals (the Board). 992 F.2d at 106. Ortiz asked the Seventh Circuit to set aside the Board's decision, in part, because he was denied due process since the transcript of the hearing before the immigration judge that the Board received contained 292 notations indicating that the testimony was "'indiscernible'" or "'inaudible.'" 992 F.2d at 106. The Seventh Circuit disagreed, finding Ortiz' lawyer "made no effort to show that the testimony that was not transcribed was material." 992 F.2d at 107. It noted that the lawyer "could have submitted an affidavit based on his own recollections, or those of his client, or those of the chaplain" but did not. 992 F.2d at 107. Antalek highlights that the court stated: "A litigant who seeks reversal on the ground of a denial of due process that is due to an inaccurate or incomplete transcript is . . . required to make the best feasible showing he can that a complete and accurate transcript would have changed the outcome of the case." 992 F.2d at 106. According to Antalek, he made his best effort to show why an accurate transcript would have changed his case. We disagree because Antalek makes no showing that anything improper occurred during voir dire and proffers no witness who could establish a factual basis to support a conclusion that "an accurate transcript would have changed the outcome of the case."

But an even more significant reason undercuts Antalek's speculative and conclusory allegations of prejudice. Even if Antalek had come forth with some reason why jury selection was improper, the overwhelming evidence presented at trial against him—confirmed by his own testimony to the jury—convinces us that there is no reasonable probability that his case would have resulted differently but for Minihan's potential errors. See *Edgar*, 294 Kan. at 838.

Antalek was acquitted of rape but convicted of all other charges. As this court observed in Antalek's direct appeal, "Antalek does not dispute what happened after the

12

car ride home." *Antalek*, 2012 WL 2148162, at *2. After K.A. and Antalek dropped their children off at school, Antalek grabbed K.A. around the neck and dragged her back into their home. Once in the bedroom, Antalek forced K.A. to take off her clothes and climbed on top of her. Antalek told K.A. he was going to kill her. He then cut her in the face and stabbed her three times in the throat. As we have mentioned, Antalek told the jury that he intended to kill K.A.

Detective Scott Wiswell of the Wichita Police Department Sex Crimes Unit, who interviewed Antalek, reaffirmed that Antalek did not deny stabbing K.A. Wiswell testified Antalek stated that "he had told K.A. he was going to stab her in the neck as soon as the police arrived and he made good on the promise." 2012 WL 2148162, at *3. Wiswell added that "Antalek expressed frustration that K.A. would not die that morning and the reason he stabbed her three times was that she was not bleeding very much and 'he said he plunged the knife in and then ripped it out, and the words that he used was that he just couldn't believe she wouldn't die.'" 2012 WL 2148162, at *3.

Considering the strength of the evidence against Antalek—which he concedes— we see no scenario where Antalek could be prejudiced by Mihihan's failure to obtain a corrected copy of the voir dire transcript. Thus, the district court did not err in summarily denying this claim. We conclude, like the district court did, that the motion, files, and records of the case show that Antalek is not entitled to relief on his ineffective assistance of counsel claim against his direct appeal attorney.

*Antalek's trial counsel was not ineffective for declining to pursue an involuntary intoxication defense.*

Antalek also argues that his trial attorney, Sullivan, was ineffective by failing to pursue an involuntary intoxication defense in line with Antalek's request.

13

Since the district court appointed counsel for Antalek and held an evidentiary hearing for this claim, we apply a bifurcated standard of review. We review the district court's factual findings for substantial competent evidence and its legal conclusions de novo. *Evans*, 315 Kan. at 218. Substantial competent evidence is evidence which "'possesses both relevance and substance and which furnishes a substantial basis in fact from which the issues can reasonably be resolved.'" 315 Kan. at 218. This court does not "'reweigh evidence, pass on the credibility of witnesses, or resolve conflicts in the evidence.'" 315 Kan. at 218.

Our review of the record shows that the district court heard substantial competent evidence at the evidentiary hearing to conclude that Sullivan's decision to forgo an involuntary intoxication defense was a reasonable professional decision. *Thompson v. State*, 293 Kan. 704, 716, 270 P.3d 1089 (2011) ("It is within the province of a lawyer to decide what witnesses to call, whether and how to conduct cross-examination, and other strategic and tactical decision.").

At the evidentiary hearing, the district court heard evidence that Sullivan decided not to pursue an involuntary intoxication defense only after thoroughly investigating it. Sullivan contacted Dr. Tracy as a potential expert, but he learned that she held a fringe opinion about the effects of the medication Antalek was prescribed, and Sullivan believed BIDS would not provide funds for the doctor's testimony. Sullivan then contacted the BIDS-approved expert, Dr. Goodman, who stated that he disagreed with Dr. Tracy and would not testify in favor of the defense. And the court noted that if Antalek had raised an involuntary intoxication defense, the State would have introduced unfavorable prior crimes evidence against him.

We agree with the district court that Sullivan's decision not to pursue an involuntary intoxication defense did not fall below an objective standard of reasonableness. Sullivan searched for a suitable expert but found none to support

14

Antalek's requested defense, and if the involuntary intoxication defense had been raised, the State could have introduced highly unfavorable prior crimes evidence against him. It was not unreasonable, then, for Sullivan to abandon it. Finally, even if Antalek cleared the hurdle of proving deficient representation, which he has not, Antalek fails to argue why the results of his trial would have been different but for Sullivan's alleged error.

The district court did not err in denying Antalek relief on his claims of ineffective assistance of counsel against his attorneys for the voir dire and involuntary intoxication issues. We thus affirm the district court's decision denying Antalek's K.S.A. 60-1507 motion.

Affirmed.